70 F.3d 1273
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ricky Nelson HOWARD, Defendant-Appellant.
 No. 95-5433.
 United States Court of Appeals, Sixth Circuit.
 Nov. 29, 1995.
 
 Before: WELLFORD, NELSON and SUHRHEINRICH, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant Ricky Nelson Howard raises several issues on appeal: (1) whether the facility destroyed, the Columbia Gas tower, was an "interstate transmission facility" as defined under the Natural Gas Pipeline Safety Act of 1968 ("NGPSA"), 49 U.S.C. app. Sec. 1671(8) (1993), repealed by Pub.L. No. 103-272, Sec. 7(b), 108 Stat. 1379 (July 5, 1994); (2) whether the destruction of the tower was a reasonably foreseeable consequence of the conspiracy; and (3) whether Howard "willfully and knowingly" damaged or destroyed the tower. We REVERSE.
 
 I.
 
 2
 Howard and two codefendants, Hale and Wallen, were named in a two count indictment charging: (1) conspiracy to destroy a 320-foot interstate transmission tower owned and operated by Columbia Gas Transmission Corporation, in violation of 18 U.S.C. Sec. 371 and 49 U.S.C. app. Secs. 1671 and 1679a(c)(2); and (2) aiding and abetting the other coconspirators in knowingly and willfully injuring or destroying, or attempting to injure or destroy, an interstate facility in violation of 18 U.S.C. Sec. 2 and 49 U.S.C. app. Secs. 1671 and 1679a(c)(2). Hale and Wallen pleaded guilty to Count One and testified against Howard. After a jury trial, Howard was convicted on both counts.
 
 
 3
 Howard operates a cable television business in Kentucky. He offered codefendant Wallen $1000 to destroy the Tel-Com tower, operated by a rival cable company. Wallen sought the assistance of Hale, promising him a cut of the money Howard offered him. The government contends that Howard pointed out the tower that he wanted Wallen to destroy, and the tower he pointed to was the nearby Columbia Gas tower, not the Tel-Com tower.
 
 
 4
 Instead of destroying the Tel-Com tower, Hale and Wallen destroyed the Columbia Gas tower. Wallen testified that he thought he destroyed the Tel-Com tower. Hale admitted that he did not know whose tower he was cutting down; Wallen told him which tower Howard wanted destroyed. Howard refused to pay the $1000 fee because the wrong tower had been destroyed. Hale, disgruntled, contacted the FBI. The indictment against Howard, Wallen and Hale followed.
 
 
 5
 The Columbia Gas tower contained an electronic system that converted pipeline pressures and flow rates into electrical signals, which were ultimately transmitted to a central monitoring location in Charleston, West Virginia. At trial, the district court rejected Howard's argument that the tower was a communication facility, not a pipeline facility, precluding prosecution under the NGPSA. The jury convicted Howard on both counts. This appeal followed.
 
 II.
 
 6
 Howard contends that the district court should have granted his motion for judgment of acquittal under Fed.R.Crim.P. 29. We review de novo a district court's decision denying a motion to acquit. United States v. Pierce, 62 F.3d 818, 826 (6th Cir.1995). We determine "whether the government had introduced evidence sufficient for any rational trier of fact to convict, viewing the evidence and all reasonable inferences in the light most favorable to the government." Id. (citations omitted).
 
 
 7
 The NGPSA provides that "[a]ny person who willfully and knowingly injures or destroys, or attempts to injure or destroy, any interstate transmission facility shall, upon conviction, be subject, for each offense, to a fine of not more than $25,000, imprisonment for a term not to exceed 15 years, or both." 49 U.S.C. app. 1679a(c)(2) (1993) (emphasis added), repealed by Pub.L. No. 103-272, Sec. 7(b), 108 Stat. 1379 (July 5, 1994).
 
 A.
 
 8
 Howard first contends that the NGPSA applies only to pipelines, not communication towers, and thus the damage to the Columbia Gas tower ("Tower") does not invoke Sec. 1679a(c)(2). The government contends that the Tower is a pipeline facility used in the transportation of gas as contemplated by Sec. 1671(8) because the Tower regulates the flow and pressure of the gas as it is moved throughout the pipeline, and is thus an integral part of the pipeline.
 
 
 9
 Howard claims that the Tower is a communications tower, not a pipeline and thus the NGPSA is not applicable. We disagree. The statute does not refer exclusively to pipelines, but rather to "interstate transmission facilities." Section 1679a makes it a criminal offense to willfully and knowingly destroy or attempt to destroy "any interstate transmission facility." Accordingly, the issue is whether the Tower is an interstate transmission facility as contemplated by the NGPSA. Interstate transmission facilities are defined as "pipeline facilities," Sec. 1671(8), which in turn are defined broadly to include "new and existing pipe rights-of-way and any equipment facility, or building used in the transportation of gas or the treatment of gas during the course of transportation...." Sec. 1671(4) (emphasis added). The Tower is an "equipment facility" as described in Sec. 1671(4), and is therefore a "pipeline facility" under Sec. 1671(8). As a pipeline facility, it is an interstate transmission facility within the meaning of Sec. 1679a. Thus, the destruction of the Tower is punishable under the NGPSA and the case is subject to federal jurisdiction.
 
 
 10
 Howard also contends that because the Tower was located in a rural area, the Tower is exempted from protection under the NGPSA. The government argues that the fact that the Tower is located in a rural area does not change the analysis because Sec. 1671(8) exempts only the "gathering" of gas in rural areas, not the transmission or distribution of gas by pipeline. We agree with the government's contention and reject this claim of error.
 
 B.
 
 11
 Howard contends that the government failed to produce evidence that Howard, or his codefendants, acted willfully in destroying the Tower. He relies on this circuit's recent decision in United States v. Abner, 35 F.3d 251 (6th Cir.1994), to support his argument. The Abner defendant set fires on private property near a national forest. The fire spread to the national forest. The defendant was charged with setting fires on federal property in violation of 18 U.S.C. Sec. 1855. The court held that the evidence did not support a finding of willfulness; there was no showing of a specific intent that the fires spread onto federal property and thus there was no evidence that the defendant willfully set fire to federal property. Abner, 35 F.3d at 255.
 
 
 12
 Although Howard has not cited United States v. Schankowski, 782 F.2d 628 (6th Cir.1986), this decision also supports his position. Schankowski involved an interpretation of 18 U.S.C. Sec. 1701, a statute that imposes criminal sanctions on anyone who "knowingly and willfully obstructs or retards the passage of the mail...." Relying on Liparota v. United States, 471 U.S. 419 (1985), we held in Schankowski that "Sec. 1701 requires a showing that the defendant knew that the effect of her actions would be to obstruct the mail." Id. at 632. By parity of reasoning, the NGPSA requires a showing that the defendant knew that the effect of his actions would be to injure or destroy a gas pipeline facility.
 
 
 13
 Howard contends that a rational jury could not find that he willfully damaged the Tower because "that was not a foreseeable consequence of hiring someone who was very familiar with the area and cable television to cut down a rival cable T.V. tower located some distance from the Columbia Gas Tower." We agree. Although Howard's codefendants cut down a tower, they did not have the specific intent to cut down the gas tower. While a reasonable jury could conclude that the defendants willfully intended to cut down the rival cable tower, a reasonable jury could not conclude, from the evidence submitted in this case, that the defendants willfully and knowingly destroyed a gas pipeline facility. As such, the government has failed to prove that the substantive offense, the knowing and willful destruction of a pipeline facility, has been committed. We therefore reverse Howard's conviction. Because we reverse, we do not address Howard's other assignments of error.
 
 III.
 
 14
 Because the government failed to provide sufficient evidence from which any rational trier of fact could conclude that Howard and/or his codefendants willfully and knowingly destroyed the Columbia Gas tower, Howard's conviction on both counts is REVERSED.
 
 
 15
 HARRY W. WELLFORD, Circuit Judge, concurring in part and dissenting in part:
 
 
 16
 I concur with the majority's recitation of the facts in part I., and its conclusion in part II.A. that the tower in question was covered by the NGPSA. I disagree, however, with the majority's conclusion in part II.B. that defendant Howard did not have the requisite mental state to be convicted under the Act. As a result, I respectfully dissent and would confirm Howard's conviction.
 
 
 17
 My colleagues reverse Howard's conviction because of his mistake as to the ownership of the tower which was destroyed by Wallen and Hale. I do not think this is an appropriate basis for acquittal. Coconspirator and codefendant Timothy Wallen testified specifically that Howard took him to the Columbia Gas tower and told Wallen that it was the tower that he wanted Wallen to destroy.[1] J/A 112. Howard did not testify to rebut Wallen's statement. Thus, in my opinion, Wallen's testimony, if believed, should have been sufficient to convict Howard of willfully and knowingly violating the NGPSA.
 
 
 18
 Howard's reliance on United States v. Abner, 35 F.3d 251 (6th Cir.1994), is misplaced for two reasons. First, Abner was not shown to have had any intent to set fire to a national forest, even though it was nearby. In contrast, the confederates in this case did intend to destroy the tower pointed out by Howard, if Wallen's testimony is accepted. Second, there was no testimony in Abner that the defendant set a fire within the bounds of the national park. Id. at 255. Rather, the proof showed that the fires were set on private property at least a hundred yards from any federal property. In this case, however, there was evidence that Howard's coconspirators directly engaged in acts proscribed by federal law.
 
 
 19
 In short, because Howard and his coconspirators did what they intended to do, only learning later that they had not destroyed Gearhart's tower, I would AFFIRM the conviction of Ricky Howard.[2]
 
 
 
 [1]
 Wallen apparently told an investigating officer that Hale had also gone on this trip. Later, however, Wallen testified that he was mistaken in saying that Hale had gone along. J/A 138
 
 
 [2]
 It is noteworthy that both of the other codefendants pleaded guilty to the charges of willful destruction of the tower in question and have paid their due penalty